**UNITED STATES of America, Appellee,**

v.

**John G. BROUMAS, Appellant.**

**No. 95–3037.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 6, 1995.

Decided Nov. 21, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Dec. 22, 1995.

---

6. We commend the government for bringing this      issue to our attention.

John A. Briley, Jr., Washington, DC, appointed by the court, argued the cause and filed the briefs for appellant.

Matthew G. Olsen, Assistant United States Attorney, Washington, DC, argued the cause for appellee. With him on the brief were Eric H. Holder, Jr., United States Attorney, John R. Fisher and William S. Block, Assistant United States Attorneys, Washington, DC.

Before: WILLIAMS, GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

John Broumas pled guilty to a one-count indictment charging him with misapplication of funds by a bank officer or employee in violation of 18 U.S.C. § 656. At sentencing, the district court increased Broumas's offense level by two, pursuant to U.S.S.G. § 3B1.3, for "abuse of a position of trust," and by another two for "more than minimal planning," pursuant to U.S.S.G. § 2F1.1(b)(2). We conclude that the facts of this case support both increases. We also reject the appellant's argument that abuse of a position of trust is itself an element of the crime, which would make the enhancement of his sentence for such an abuse improper by the terms of U.S.S.G. § 3B1.3. Accordingly, we affirm the sentence in full.

## I. Background

Until May 1990 John Broumas was the Chairman of the Board of Madison Bank of Virginia (MB–VA) and a Director of James Madison Limited, the holding company that controlled both MB–VA and Madison National Bank of Washington, D.C. At that time Broumas had a substantial net worth, most of which was in the form of stock in the holding company. His fortune was declining, however, along with the value of his James Madison shares. The Madison banks ultimately failed in 1991.

During the first half of 1990 Broumas maintained personal accounts at MB–VA, Madison National Bank, and Heritage Bank. Heritage Bank, with which Broumas had no professional relationship, had a general policy of giving immediate credit on deposits. By virtue of his position with MB–VA, Broumas was given immediate credit on checks deposited to his accounts there as well; this benefit, referred to as the "red star privilege" because the depositor exercises it by having a teller stamp a red star upon the deposited check, was made available only to officers and directors of MB–VA and to significant depositors.

In April 1990 Broumas, finding himself in increasingly dire financial straits, embarked upon a check-kiting scheme that exploited the red star privilege he held by virtue of his office. Taking advantage of the two- to five-day "float period" between the time that a check is deposited and the time that the bank of deposit collects the funds from the drawee

bank, Broumas was able artificially to inflate the balances in his accounts at the two Madison banks and at Heritage Bank. He would write a check on an account at one bank for an amount in excess of the collected funds in the account and deposit it into an account at a second bank, where he would be given an immediate credit. Before that check made its way back to the first bank, Broumas would write another over-balance check on a third account and deposit it, again receiving an immediate credit that would prevent the first check from being dishonored for insufficient funds. Broumas used the checks drawn against these artificially inflated balances to meet stock margin calls and for other personal expenses.

Broumas practiced this scheme over a period of two months. Some days the amount of his overdrafts exceeded $200,000. When the scheme was discovered on June 1, 1990, Broumas's overdraft at MB–VA was more than $71,000. Broumas repaid that amount to the bank the following month and later pled guilty to a single count of misapplication of funds by a bank officer or employee in violation of 18 U.S.C. § 656.*

As recommended in the presentence report, the district court increased Broumas's offense level by two points on the ground that he had abused a position of trust, *see* U.S.S.G. § 3B1.3, and by another two points on the ground that the offense involved more than minimal planning, *see* U.S.S.G. § 2F1.1(b)(2). The court also decreased the offense level by three points for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. In consideration of Broumas's advanced age, health, family circumstances, and other factors, the district court departed downward from the Guidelines range and sentenced Broumas to three months of imprisonment in a community confinement center, to be followed by nine months of "house arrest" and three years of supervised release. Execution of the sentence has been stayed pending Broumas's appeal.

On appeal Broumas argues that neither enhancement is appropriate on the facts of this case. The only evidence that he abused a position of trust, he argues, is that he abused the red star privilege. Because he exercised this privilege in his capacity as a bank customer, not as an officer or director, and because the privilege was also available to significant depositors who held no position with the bank, his abuse of the privilege does not, he says, bespeak an abuse of his undoubted position of trust. Merely having been a bank officer at the time of the crime, he goes on, cannot support the enhancement for abuse of a position of trust, as that itself is an element of the offense defined in § 656, not an aggravating circumstance in a particular case. Finally, Broumas argues that the enhancement of his sentence for more than minimal planning is not supported by the record because each instance of check-kiting was an isolated and unplanned event ("purely opportune" in the words of U.S.S.G. § 1B1.1 appl. note 1(f)), not in furtherance of a continuing scheme.

## II. Analysis

We review the district court's application of the Sentencing Guidelines in accord with the trichotomy prescribed by the Congress and explicated by this court in *United States v. Kim*, 23 F.3d 513 (D.C.Cir.1994):

[P]urely legal questions are reviewed *de novo*; factual findings are to be affirmed unless "clearly erroneous"; and we are to give "due deference" to the district court's application of the guidelines to facts. "Due deference" presumably is meant to fall somewhere between *de novo* and "clearly erroneous," a standard of review that reflects an apparent congressional desire to compromise between the need for uniformity in sentencing and the recognition that the district courts should be afforded some flexibility in applying the guidelines to the facts before them.

23 F.3d at 517. Therefore, we review de novo the question whether the enhancement

* Section 656 provides as follows:

 Whoever, being an officer, director, agent or employee of, or connected in any capacity with any … insured bank, … embezzles, abstracts, purloins or willfully misapplies any of the

moneys, funds or credits of such bank … shall be fined not more than $5,000 or imprisoned not more than five years, or both....

18 U.S.C. § 656.

for abuse of a position of trust duplicates an element of the offense described in 18 U.S.C. § 656. The district court's application of the two enhancements, however, receives due deference.

## A. Abuse of a Position of Trust

■ Under § 3B1.3 of the Sentencing Guidelines, the district court must enhance by two levels the sentence of any person who has "abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." In order to apply this provision the district court must determine "(1) whether the defendant occupied a position of trust; and (2) whether the defendant abused that position in a manner that significantly facilitated the commission or concealment of the offense." *United States v. West,* 56 F.3d 216, 219 (D.C.Cir.1995).

■ *1. Position of Trust.* Application note 1 accompanying § 3B1.3, as amended in 1993, indicates that the defining characteristic of a "position of trust" is "professional or managerial discretion (*i.e.,* substantial discretionary judgment that is ordinarily given considerable deference)." To illustrate, the commentary provides that a bank teller who steals from the till is not subject to the enhancement because his or her position does not entail professional or managerial discretion. *See id.; see also West,* 56 F.3d at 221 (holding that courier is not in position of trust). On the other hand, because a bank executive is entrusted with substantial discretion, his fraudulent loan scheme or embezzlement could be considered an abuse of a position of trust. U.S.S.G. § 3B1.3 appl. note 1.

Broumas unquestionably held a position of trust throughout the period in which he pursued his check-kiting scheme. He was Chairman of the Board of MB–VA, a position that entails perhaps the broadest managerial discretion to be found in a corporate organization and the occupant of which is subject to little or no direct supervision.

■ It is also clear that Broumas's use of the red star privilege—a privilege available to him solely by virtue of his position of trust—significantly facilitated his check-kit-

ing scheme. If the defendant's position of trust made it easier for him to carry out or conceal his crime, then the position has "significantly facilitated" the crime. *Cf. United States v. Craddock,* 993 F.2d 338, 341–42 (3d Cir.1993). Broumas's access to immediate credit significantly lessened the risk that a check would "bounce" and thereby expose the entire scheme. Indeed, by virtue of the red star privilege Broumas was able to practice the scheme undetected for two months.

■ *2. Abuse of Position.* The more difficult question in this case is whether Broumas's use of the red star privilege can be considered an abuse of his position. Broumas argues that in exercising this privilege he was acting not in his capacity as a bank officer but as a mere bank depositor; in this regard he points out that the privilege was intended for use in the privilege holder's private banking transactions and that it is also available to some customers who are not bank officers or directors.

The examples provided in the commentary and, as Broumas points out, the facts in many of the cases applying the enhancement for abuse of a position of trust involve situations in which the defendant abused a discretion inherent in the exercise of his professional or managerial duties. *See, e.g., United States v. Georgiadis,* 933 F.2d 1219 (3d Cir. 1991) (defendant diverted funds from mortgage settlements into own account by falsifying deposit slips); *United States v. McElroy,* 910 F.2d 1016 (2d Cir.1990) (defendants, employed by two different banks, approved loans to one another without making appropriate internal reports); *see also* U.S.S.G. § 3B1.3 appl. note 1.

In this case Broumas abused a trust incidental to rather than inherent in his position as Chairman of the Board of MB–VA. It was nonetheless solely because of his position that the bank extended the red star privilege to him; indeed, the privilege was but a manifestation of the bank's trust in Broumas as an officer and a director. That the privilege was intended for use in his personal banking shows only that the bank's trust in its officers and directors was not limited to their conduct of the bank's business but extended

also to their personal dealings with the bank. By abusing this privilege, that is, by using it in a context of transactions for which it was clearly not intended, Broumas took advantage, to the bank's detriment, of its trust in him.

Broumas next contends that because the bank makes the red star privilege available to significant depositors as well as to bank officers and directors, he cannot be said even to have "*used* his position" (*i.e.*, much less abused his position) in the conduct of his personal banking. This is a non sequitur. At his plea hearing, Broumas agreed to the Government's statement that he had access to the privilege "as a bank officer." We have no basis for concluding that he might have had access to the privilege for any other reason. We must agree with the district court, therefore, that Broumas's abuse of the privilege was an abuse of his position.

■ Finally, Broumas suggests that the abuse of trust enhancement cannot be applied in this case because the Sentencing Guidelines specifically limit the application of the enhancement to cases in which an abuse of trust is not "included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. There seem to be two points here. Following upon his claim that his use of the red star privilege did not amount to an abuse of a position of trust, Broumas first argues that the only evidence supporting the enhancement in this case is that he was a bank officer throughout the course of his check-kiting scheme. Because being a bank officer is an element of the offense described in § 656, he argues, the enhancement in this case is duplicative and is therefore barred by the portion of the Guidelines quoted above. We rejected the premise of this argument when we held that his abuse of the red star privilege constituted an abuse of a position of trust.

Insofar as Broumas seems also to suggest that the enhancement is duplicative because a violation of § 656 necessarily involves the defendant's abuse of a position of trust, we do not agree. Section 656 penalizes theft, embezzlement, or misapplication of bank funds by an "officer, director, agent, or employee" of a banking institution. Therefore, the statute applies by its terms to a bank employee who does not hold a position that entails managerial or professional discretion—that is, an employee who does not hold a position of trust. The commentary to U.S.S.G. § 3B1.3, however, specifically provides that the enhancement for abuse of a position of trust "would not apply in a case of an embezzlement or theft by an ordinary bank teller ... because such positions are not characterized by [professional or managerial discretion]." U.S.S.G. § 3B1.3 appl. note 1.

More pertinent to Broumas's situation as Chairman of the MB–VA Board, the enhancement does not apply to an officer or director who is convicted under § 656 for an embezzlement that did not depend upon his having and abusing a position of trust. The enhancement for abuse of a position of trust applies only if "the position of trust [has] contributed in some significant way to facilitating the commission or concealment of the offense." U.S.S.G. § 3B1.3 appl. note 1.

Every circuit that has considered the duplication argument has rejected it for one or the other of these reasons. *See McElroy,* 910 F.2d at 1027 ("Since not all [the positions listed in § 656] are necessarily positions of trust, abuse of trust is not necessarily a part of the offense"); *Georgiadis,* 933 F.2d at 1225 ("Since it is not necessary for the government to prove an *abuse* of trust (within the meaning of the Guidelines) in order to convict under 18 U.S.C. § 656, we reject [appellant's] theory that an abuse of trust is, for purposes of the Guidelines, an element of embezzlement already taken into account by the base offense level of four imposed by U.S.S.G. § 2B1.1(a)"); *United States v. Fisher,* 7 F.3d 69, 70 (5th Cir.1993) (per curiam); *United States v. Dion,* 32 F.3d 1147, 1149–50 (7th Cir.1994); *United States v. Christiansen,* 958 F.2d 285, 287 (9th Cir.1992). We now join them in holding that the enhancement for abuse of a position of trust does not duplicate an element of the base offense of misappropriation of funds by a bank officer or employee under § 656.

## B. More than Minimal Planning

■ Broumas also objects to the two-level enhancement for more than minimal plan-

ning, which the district court must apply "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." U.S.S.G. § 1B1.1 appl. note 1(f). According to Broumas, his obviously repeated acts of check-kiting come within the exception for the "purely opportune." Each instance of check-kiting, he says, was an isolated event.

The facts simply do not support the contention that each instance of check-kiting was opportunistic; Broumas points to no fortuitous circumstances that prompted him to act. He had access to immediate credit throughout the period in question, and he used it repeatedly with skill and daring. In view of the two-month duration of Broumas's check-kiting operation and the remarkable fact that no check had ever "bounced" when his $71,000 overdraft position was discovered, the district court had ample bases upon which to conclude that the misconduct here involved more planning than does the offense of misappropriation of funds in its simplest form.

### III. Conclusion

In sum, we conclude that the facts of this case support the application of sentence enhancements both for abuse of a position of trust and for more than minimal planning. Because we also hold that the enhancement for abuse of a position of trust does not duplicate an element of the offense of misapplication of funds by a bank officer or employee, as described in 18 U.S.C. § 656, the appellant's sentence is

*Affirmed.*