**UNITED STATES of America, Appellee,**

v.

**Damian VALDEZ–TORRES, Appellant.**

**No. 96–3040.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1996.

Decided March 18, 1997.

---

Teresa Alva, Assistant Federal Public Defender, Washington, DC, argued the cause for the appellant. A.J. Kramer, Federal Public Defender, was on brief.

Whitney C. Ellerman, Assistant United States Attorney, Washington, DC, argued the cause for the appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Michael F. Tubach, Assistant United States Attorneys, were on brief.

Before: EDWARDS, Chief Judge, HENDERSON and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Damian Valdez–Torres (Valdez–Torres) appeals the sentence he received for unarmed assault on an Immigration and Naturalization Service (INS) agent. He argues that the district court improperly used the "Aggravated Assault" provision of the United States Sentencing Guidelines (Guidelines) in sentencing him and should not have enhanced his sentence for using a dangerous weapon or adjusted it upward for involving an official victim. We disagree and accordingly affirm the district court.

## I. FACTS

On April 2, 1995 Valdez–Torres escaped from jail in Bay St. Louis, Mississippi, where he was awaiting deportation. The INS learned that he was hiding out in Washington, D.C. and on April 14 set up surveillance outside the apartment building where he was staying. When he left the building and got into an automobile, four INS agents in two vehicles surrounded him. One of the agents, Joseph Mangiulli (Mangiulli), got out of his vehicle and stood next to the left front wheel of Valdez–Torres's car. Valdez–Torres's car moved forward in Mangiulli's direction, at which point Mangiulli shouted that the car was about to hit him. Valdez–Torres did not stop and Mangiulli shot him in the neck. Valdez–Torres's car missed Mangiulli and crashed.

Valdez–Torres was indicted on two counts of assault on a federal officer in violation of 18 U.S.C. § 111(a) and (b). He agreed to plead guilty to one count of unarmed assault in violation of 18 U.S.C. § 111(a) and the government agreed to dismiss the remainder of the indictment and an unrelated indictment and to recommend at sentencing that Valdez–Torres receive credit for acceptance of responsibility. The district court accepted Valdez–Torres's plea and, applying the ag-

gravated assault guideline, the enhancement for use of a dangerous weapon and the upward adjustment for involving an official victim, subsequently sentenced him to three years' imprisonment.

## II. DISCUSSION

### A. Use of Sentencing Guideline Section 2A2.2

Valdez–Torres argues first that the district court should have used U.S.S.G. § 2A2.4 ("Obstructing or Impeding Officers") instead of section 2A2.2 ("Aggravated Assault") as the guideline on which to base his sentence. According to him, the district court interpreted the cross-reference language of section 2A2.4(c)(1) incorrectly and as a result considered conduct outside the offense of conviction (unarmed assault). He also argues that, even if it could consider his underlying conduct, the district court incorrectly determined that his conduct constituted aggravated assault. Finally, he urges us to consider that the government allegedly told him during plea negotiations that it would not request the court to apply section 2A2.2 in sentencing him.

Valdez–Torres's argument regarding the applicable section focuses on the cross-reference to section 2A2.2 contained in section 2A2.4(c)(1). The latter provision states: "If the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.4(c)(1). In his view, the cross-reference allows only the conduct comprising the offense of conviction, not relevant conduct, to be considered.[1] We review this question of interpretation *de novo*. *See United States v. Broumas*, 69 F.3d 1178, 1180 (D.C.Cir.1995), *cert. denied*, — U.S. ——, 116 S.Ct. 1447, 134 L.Ed.2d 566 (1996).

As Valdez–Torres points out, the Eleventh Circuit held that an earlier version of section 2A2.4(c)(1) barred a sentencing court from considering relevant conduct. *United States v. Jennings*, 991 F.2d 725, 734 (11th Cir. 1993). In November 1992, however, the United States Sentencing Commission (Commission) amended section 2A2.4(c)(1).[2] Specifically, the Commission removed the language regarding conviction under 18 U.S.C. § 111, which language apparently formed the basis for the court's conclusion in *Jennings* that the sentencing court was barred from considering conduct other than that included in the offense of conviction.[3] In doing so, the Commission stated that the amended language intends section 2A2.2 to be used "on the basis of the underlying conduct." U.S. SENTENCING GUIDELINES MANUAL App. C amend. 443 (1995).

The Eighth Circuit was presented with precisely the argument Valdez–Torres makes and, after considering *Jennings*, concluded that the 1992 amendment to section 2A2.4(c)(1) allows the sentencing court to consider relevant or underlying conduct in deciding whether to apply the cross-reference to section 2A2.2. *United States v. Street*, 66 F.3d 969, 978–79 (8th Cir.1995). The *Street* court observed that section 1B1.3(a)(1) of the Guidelines calls for cross-references to be applied on the basis of all acts surrounding the offense of conviction unless otherwise specified. *Id.* at 979. It then determined that the deletion of the reference to 18 U.S.C. § 111 and the express reference to underlying conduct in the Commission's explanation of the amendment eliminated any doubt that the sentencing court should look to all relevant conduct. *Id. Street* disposes of Valdez–Torres's interpre-

---

1. "Relevant conduct" means "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a)(1).

2. The pre-amendment version of section 2A2.4(c)(1) provided that "[i]f the defendant is convicted under § 111 and the conduct constituted aggravated assault, apply § 2A2.2 (Aggravated Assault)."

3. Other circuits interpreted the pre-amendment language to mean that the sentencing court *should* examine the defendant's underlying conduct in determining whether to use the cross-reference. *See United States v. Rue*, 988 F.2d 94, 96 (10th Cir.1993); *United States v. Padilla*, 961 F.2d 322, 326 (2d Cir.), *cert. denied*, 506 U.S. 846, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992).

tation argument convincingly and we therefore adopt its analysis.

Valdez–Torres goes on to argue that, even if the district court could consider his underlying conduct (including the dismissed charges), that conduct did not constitute aggravated assault. We review the district court's resolution of this factual question, *i.e.*, Valdez–Torres's intent in driving his automobile as he did, under the "clearly erroneous" standard. *See Broumas*, 69 F.3d at 1180–81; *see also United States v. Park*, 988 F.2d 107, 109 (11th Cir.), *cert. denied*, 510 U.S. 882, 114 S.Ct. 226, 126 L.Ed.2d 182 (1993).

■■■ Application note 1 to section 2A2.2 states that, for the purpose of the section, "aggravated assault" is defined as, among other things, "a felonious assault that involved ... a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten)." Valdez–Torres does not dispute that an automobile can constitute a dangerous weapon but argues that he intended only to escape or, at worst, to frighten agent Mangiulli, not to injure him. Valdez–Torres first attacks the probation officer's reliance on Mangiulli's opinion evidence regarding Valdez–Torres's intent.[4] There are (at least) two problems with Valdez–Torres's argument. First, under Federal Rule of Evidence 701, an eyewitness may express an informed opinion that would help resolve a fact in issue, here, Valdez–Torres's intent. *See, e.g., Virgin Islands v. Knight*, 989 F.2d 619, 629–30 (3d Cir.) (lay witness to shooting with "firsthand knowledge of the factual predicates that form the basis for the opinion" may express opinion whether shooting was intentional or accidental), *cert. denied*, 510 U.S. 994, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993); *United States v. Juvenile Male*, 864 F.2d 641, 647 (9th Cir.

1988) (victim may offer opinion of assailant's intent). Second, Valdez–Torres's accelerating despite Mangiulli's warning that the car was about to hit him supports the conclusion that Valdez–Torres intended to do him bodily harm. Given the evidence before the district court, its finding that Valdez–Torres intended to injure Mangiulli is not clearly erroneous.[5]

In addition, Valdez–Torres asserts that the government agreed during plea negotiations that section 2A2.3 ("Minor Assault") or section 2A2.4, rather than section 2A2.2, applied but that at sentencing the government nevertheless asked the court to use section 2A2.2. The plea agreement, however, stated simply that the government "reserves the right to recommend that your client's sentence be for the maximum allowable term of imprisonment" and that the written agreement "sets forth the entire understanding between the parties and constitutes the complete plea agreement." App. 10, 11. In signing the agreement, Valdez–Torres specifically reaffirmed "that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in this plea agreement." App. 12. Valdez–Torres's lawyer (who also represents him on appeal) likewise acknowledged that "[t]hese pages accurately and completely set forth the entire plea agreement." App. 12. If Valdez–Torres and his lawyer believed they had a more favorable "side deal" with the government, they should not have signed the agreement as written.[6]

## B. Enhancement for Use of Automobile as Dangerous Weapon

■■■ Valdez–Torres argues that, even if the district court correctly used section

---

4. The probation officer obtained Mangiulli's opinion from "reports submitted by the Immigration and Naturalization Service agents." Presentence Investigation Report at 17, *United States v. Valdez–Torres* (D.D.C.1996) (No. CR–95–117–01) (PSR).

5. Valdez–Torres also complains that the district court made no findings of fact on the issue. The court, however, adopted the factual findings in the presentence report. App. 72. One of the report's findings was that Valdez–Torres "attempted to injure" Mangiulli. PSR at 3.

6. Contrary to his assertion, Valdez–Torres received a substantial benefit from his bargain: one count charging a violation of 18 U.S.C. § 111(a) and (b) was dismissed and he was allowed to plead to a single count of violating only section 111(a). As a result, he received a sentence of only thirty-six months' imprisonment, the statutory maximum for a violation of section 111(a), although the applicable Guidelines range was considerably higher. In addition, the government recommended that he receive credit for acceptance of responsibility and dismissed another case against him. App. 10.

2A2.2, it erred by considering his use of the vehicle both to select section 2A2.2 and to enhance his sentence pursuant to section 2A2.2(b)(2)(B). In his view, this constituted impermissible "double-counting."

Several other circuits have addressed the question and, with only one exception, have rejected Valdez–Torres's argument. *See United States v. Dunnaway,* 88 F.3d 617, 619 (8th Cir.1996) (affirming enhancement for use of bottle and boots); *United States v. Sorensen,* 58 F.3d 1154, 1161 (7th Cir.1995) (affirming enhancement for use of concrete block); *United States v. Garcia,* 34 F.3d 6, 11 (1st Cir.1994) (affirming enhancement for use of automobile); *United States v. Reese,* 2 F.3d 870, 894–96 (9th Cir.1993) (affirming enhancement for use of unspecified dangerous weapon), *cert. denied,* 510 U.S. 1094, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994); *United States v. Williams,* 954 F.2d 204, 206–08 (4th Cir.1992) (affirming enhancement for use of metal chair). Only the Second Circuit has taken the contrary view. *United States v. Hudson,* 972 F.2d 504, 507 (2d Cir.1992) (vacating sentence due to enhancement for use of automobile). We are persuaded by the majority rule.

The Second Circuit's opinion in *Hudson* distinguishes between "inherently dangerous weapons" and items that are dangerous only when used in certain ways. *Id.* at 506–07. As the Ninth Circuit has observed, however, *Hudson* fails to distinguish between the base offense level and an enhancement.[7] *Reese,* 2 F.3d at 896 n. 32. Moreover, the distinction drawn in *Hudson* has no basis in the language of the Guidelines. The majority rule, on the other hand, is firmly grounded in the language of the Guidelines. Section 2A2.2(b)(2)(B) expressly calls for a four-point enhancement if a dangerous weapon is used.[8] The Commission "plainly understands the concept of double counting, and expressly forbids it where it is not intended."[9] *Williams,* 954 F.2d at 208; *see also Reese,* 2 F.3d at 894. In the absence of a caveat that the enhancement does not apply in these circumstances, we would ignore the plain language of the Guidelines were we not to apply the enhancement here.

Furthermore, impermissible double counting does not occur if the enhancement does not duplicate an essential element of the offense. *See Reese,* 2 F.3d at 895 ("[T]he use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double counting only where, absent such conduct, it is impossible to come within that guideline."); *see also Williams,* 954 F.2d at 208 (enhancement for crimes committed under criminal justice sentence is not impermissible double counting when added to base offense level for escape because escape can occur without escapee being under criminal justice sentence). Section 2A2.2 applies to different types of aggravated assault, of which assault with a dangerous weapon is but one.[10] The enhancement for use of a dangerous weapon thus does not duplicate an essential element of aggravated assault but instead is properly used to distinguish among sentences imposed pursuant to the section for different kinds of assaults.[11]

7. Contrary to the holding in *Hudson,* the base offense level is not "increased" from a hypothetical starting point; it is selected on the basis of the defendant's conduct. Only an enhancement constitutes an increase. *Compare* U.S.S.G. § 2A2.2(a) (identifying base offense level for aggravated assault) *with id.* § 2A2.2(b) (identifying specific offense characteristics that increase offense level).

8. Under the Guidelines, a "dangerous weapon" is "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1 application note 1(d).

9. The Commission has explained, for example, that section 2A2.4 already "reflects the fact that the victim was a government officer performing official duties. Therefore do not apply § 3A1.2 (Official Victim) unless subsection (c) requires the offense level to be determined under § 2A2.2 (Aggravated Assault)." U.S.S.G. § 2A2.4 application note 1.

10. A felonious assault involving "serious bodily injury" or "an intent to commit another felony" can constitute aggravated assault even without the use of a dangerous weapon. U.S.S.G. § 2A2.2 application note 1; *see also Reese,* 2 F.3d at 896.

11. Even if the involvement of a dangerous weapon were an essential element of aggravated assault, impermissible double counting still would

### C. Upward Adjustment for Official Victim

 Finally, Valdez–Torres argues that, because the assault on the INS agent was his only offense, the district court erroneously adjusted his sentence upward pursuant to Guidelines section 3A1.2(b), which applies to assaults on law enforcement officers. Application note 1 to section 2A2.4 indicates, however, that the official victim adjustment should be applied if section 2A2.4(c)(1)'s cross-reference to section 2A2.2 has been invoked. *See United States v. Padilla,* 961 F.2d 322, 327 (2d Cir.), *cert. denied,* 506 U.S. 846, 113 S.Ct. 138, 121 L.Ed.2d 91 (1993); *United States v. Kleinebreil,* 966 F.2d 945, 955 (5th Cir.1992); *United States v. Sanchez,* 914 F.2d 1355, 1362 (9th Cir.1990), *cert. denied,* 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991). That is plainly what occurred here. Furthermore, application note 3 to section 3A1.2 states that the official victim adjustment should not be applied if the applicable guideline already incorporates assaulting an official victim, at the same time noting that section 2A2.4 is the only guideline that does incorporate that factor.[12] The adjustment thus applies if section 2A2.2 is used as the guideline, even when the assault is the sole offense.

Valdez–Torres attempts to support his position by pointing to application note 5 to section 3A1.2, which explains that the adjustment "applies in circumstances tantamount to aggravated assault against a law enforcement officer or corrections officer, committed in the course of, or in immediate flight following, another offense, such as bank robbery." U.S.S.G. § 3A1.2 note 5. The application note, however, simply explains one circumstance in which the adjustment applies (*i.e.,* when the assault occurs during another offense). It does not explicitly or by implication preclude use of the adjustment in other circumstances. In any event, Valdez–Torres at the time of the assault was a fugitive from lawful custody and was attempting to avoid capture. The adjustment thus would apply even under Valdez–Torres's narrow reading of the application note.

[6] Finally, we reject Valdez–Torres's contention that the facts do not support the imposition of the official victim adjustment. Contrary to Valdez–Torres's assertion, the fact that agent Mangiulli shouted that he was with the police, PSR at 3, gave the district court an adequate basis on which to find Valdez–Torres knew his car was headed toward a law enforcement officer. By adopting the presentence report, the district court made the requisite finding. *See United States v. Gaytan,* 74 F.3d 545, 557 (5th Cir.) (court may resolve sentencing issues by adopting presentence report by reference), *cert. denied,* —— U.S. ——, 117 S.Ct. 77, 136 L.Ed.2d 36 (1996).

For the foregoing reasons, Valdez–Torres's sentence is

*Affirmed.*

---

**12.** Application note 3 provides:

not occur. The enhancement under section 2A2.2(b)(2)(B) applies "if a dangerous weapon (including a firearm) was otherwise *used,*" whereas aggravated assault occurs if a dangerous weapon was *"involved,"* U.S.S.G. § 2A2.2 application note 1 (emphases added). *See Williams,* 954 F.2d at 206–07.

Do not apply this adjustment if the offense guideline specifically incorporates this factor. In most cases, the offense to which subdivision (a) will apply will be from Chapter Two, Part A (Offenses Against the Person). The only offense guideline in Chapter Two, Part A, that specifically incorporates this factor is § 2A2.4 (Obstructing or Impeding Officers). U.S.S.G. § 3A1.2 application note 3.