**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-4551**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

MONTEZ GADDY,

        Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., District Judge. (3:13-cr-00325-RJC-DCK-1)

Submitted: May 31, 2016          Decided: July 13, 2016

Before AGEE, DIAZ, and FLOYD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Jennifer Haynes Rose, LAW OFFICE OF JENNIFER HAYNES ROSE, Cary, North Carolina, for Appellant. Jill Westmoreland Rose, United States Attorney, Anthony J. Enright, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In an effort to elude police during a traffic stop, Montez Gaddy, who was driving a Mustang, struck a stationary vehicle with Deputy United States Marshal Joe Graham inside. A high speed car chase ensued and Gaddy was ultimately apprehended.

Following a trial, a jury found Gaddy guilty of assaulting, resisting, opposing, impeding, intimidating, and interfering with a Deputy United States Marshal in the performance of his official duties, using a dangerous weapon, to wit: a vehicle, in violation of 18 U.S.C. § 111(a)(1), (b) (2012). The district court sentenced him to 120 months' imprisonment. Gaddy appealed.

On appeal, Gaddy argues that the district court erroneously calculated his Guidelines range. We review any criminal sentence, "whether inside, just outside, or significantly outside the Guidelines range," for reasonableness, "under a deferential abuse-of-discretion standard." United States v. King, 673 F.3d 274, 283 (4th Cir. 2012); see Gall v. United States, 552 U.S. 38, 41, 51 (2007).

Gaddy first argues that the district court erred in assigning him a base offense level under U.S. Sentencing Guidelines Manual § 2A2.2 (2014), governing "Aggravated Assault," rather than assigning him a base offense level under USSG § 2A2.4, governing "Obstructing or Impeding Officers."

2

The statutory index to the Guidelines lists both the aggravated assault Guideline and obstruction Guideline as potentially applicable to 18 U.S.C. § 111 violations. See USSG App. A (statutory index). In turn, the obstruction Guideline contains a cross-reference to the aggravated assault Guideline if the defendant's conduct in obstructing the officer constituted an aggravated assault. USSG § 2A2.4(c)(1).

Aggravated assault is defined as "a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) an intent to commit another felony."* USSG § 2A2.2 cmt. n.1. Thus, § 2A2.2 applies to defendants who commit a felonious assault involving any one of the four enumerated scenarios. See United States v. Rue, 988 F.2d 94, 96 (10th Cir. 1993) (holding that "[t]he plain language of this definition of [aggravated assault] requires § 2A2.2 be applied if any of the . . . described situations exists"). Here, the district court found that the felonious assault involved a dangerous weapon with intent to cause bodily injury.

---

* A dangerous weapon "includes any instrument that is not ordinarily used as a weapon (e.g., a car, a chair, or an ice pick) if such an instrument is involved in the offense with the intent to commit bodily injury." USSG § 2A2.2 cmt. n.1; see USSG § 1B1.1 cmt. n.1(A), (D).

"Sentencing judges may find facts relevant to determining a Guidelines range by a preponderance of the evidence," United States v. Cox, 744 F.3d 305, 308 (4th Cir. 2014) (internal quotation marks omitted), that is, the court must find these facts "more likely than not" to be true, see United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004). The jury found that Gaddy used a dangerous weapon — a vehicle — to commit the offense, and Gaddy concedes that the Mustang could be considered a dangerous weapon. However, he takes issue with the district court's finding that he had intent to cause bodily injury to Agent Graham.

At trial, Graham and other officers testified that Gaddy struck Graham's vehicle with the Mustang and that Gaddy's actions were deliberate. Despite Gaddy's claim that he was merely attempting to flee the scene, we conclude that the district court could reasonably infer from Gaddy's actions that he intended to cause bodily injury to Agent Graham with the Mustang. See, e.g., United States v. Valdez-Torres, 108 F.3d 385, 388 (D.C. Cir. 1997); United States v. Garcia, 34 F.3d 6, 10-11 (1st Cir. 1994).

Gaddy also contends that the district court erred in applying USSG § 2A2.2(a), because the issue of intent to cause bodily injury was not submitted to the jury and proven beyond a reasonable doubt, in contravention of Apprendi v. New Jersey,

4

530 U.S. 466 (2000), and its progeny. Apprendi held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court went a step further in Alleyne v. United States, 133 S. Ct. 2151 (2013), declaring, "[m]andatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. at 2155.

These decisions have no application in Gaddy's case. The district court's factual finding regarding intent did not increase Gaddy's statutory minimum or maximum sentence, but merely determined his Guidelines range within the prescribed statutory range. Courts have consistently rejected claims that facts underlying a defendant's Guidelines range must be submitted to a jury. See United States v. Booker, 543 U.S. 220, 233 (2005) ("[W]hen a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."); see also Alleyne, 133 S. Ct. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long

5

recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.").

Next, Gaddy argues that the district court erred in applying a four-level enhancement pursuant to USSG § 2A2.2(b)(2)(B) for use of a dangerous weapon during the offense. The same reasoning that supports application of USSG § 2A2.2(a) also supports application of § 2A2.2(b)(2)(B), and the commentary specifically provides that "[i]n a case involving a dangerous weapon with intent to cause bodily injury, the court shall apply <u>both</u> the base offense level <u>and</u> subsection (b)(2)." USSG § 2A2.2 cmt. n.3 (emphasis added). Furthermore, after striking Agent Graham's car and fleeing the scene, Gaddy led police on a high speed car chase in heavy traffic, resulting in at least one accident. As the Government notes, "[f]leeing from law enforcement authorities by driving [a vehicle] recklessly and at a high rate of speed to escape capture constitute[s] another dangerous, life-threatening use of the vehicle — which already had become a dangerous weapon in the course of this criminal event . . . and this second dangerousness justifies the enhancement for otherwise using a dangerous weapon." <u>United States v. Morris</u>, 131 F.3d 1136, 1138 (5th Cir. 1997).

Gaddy also asserts that the district court erred by increasing his offense level under USSG § 2A2.2(b)(7). This provision calls for a two-level increase if the defendant was

6

convicted under 18 U.S.C. § 111(b). Gaddy contends that this increase, as well as the four-level increase under USSG § 2A2.2(b)(2)(B), amount to double counting.

In applying the Guidelines, double counting is permitted unless expressly prohibited. United States v. Rivera-Santana, 668 F.3d 95, 201 (4th Cir. 2012); see also USSG § 1B1.1 cmt. n.4 ("The offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively (added together) unless the guideline specifies that only the greater (or greatest) is to be used."). Section 2A2.2 does not expressly prohibit double counting. The district court properly applied both enhancements.

Finally, Gaddy challenges the six-level enhancement under USSG § 3A1.2(b), which applies when the victim of the offense is a government officer or employee, the defendant was motivated by the victim's status as a government officer or employee in committing the offense, and "the applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person)." USSG § 3A1.2(b). Gaddy questions the finding that he knew that Agent Graham was a law enforcement officer.

The evidence presented at trial showed that the emergency lights on Agent Graham's vehicle were activated when Gaddy drove into it. Graham and Gaddy had eye contact before the collision. Gaddy's own trial testimony revealed that he was well aware that

7

Graham was a law enforcement official.  Claiming that it had actually been Graham who had driven into him, Gaddy testified, "I couldn't even believe [sic] he hit me for real because, I mean, that's not what the police do."  We conclude that a preponderance of the evidence supports application of the § 3A1.2(b) enhancement.

Accordingly, we affirm Gaddy's sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

8