**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jefferey SORENSEN and Dennis J.**
**Karda, Defendants–Appellants.**

**Nos. 94–1039, 94–1084.**

United States Court of Appeals,
Seventh Circuit.

Argued March 27, 1995.

Decided June 22, 1995.

Jacqueline Ross (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

John Thomas Moran, Jr. (argued), Thomas A. Daley, Chicago, IL, for Jefferey Sorensen.

James F. Young (argued), Chicago, IL, for Dennis J. Karda.

Before CUMMINGS and FLAUM, Circuit Judges, and WALTER, District Judge.*

FLAUM, Circuit Judge.

Defendants Jefferey Sorensen and Dennis Karda pleaded guilty to assaulting federal officers and using a deadly and dangerous weapon in the commission of that offense, in violation of 18 U.S.C. §§ 2, 111. The district court sentenced Sorensen to 70 months imprisonment and three years supervised release, and sentenced Karda to 52 months incarceration and three years supervised release. On appeal, the defendants raise several challenges to their sentences. We vacate and remand for resentencing on one issue and affirm the others.

**I.**

On August 1, 1991, shortly before midnight, Jefferey Sorensen, Dennis J. Karda, Keith J. Sliwa and Gregory Moritz, all members of the Simon City Royals street gang, decided to cause some trouble in Chicago. First, they confronted and assaulted an individual in a convenience store on the city's northwest side. They repeatedly struck the victim with their fists, sticks and rocks, and then stole his automobile and drove away. Later that evening, Sorensen and his cohorts crossed paths with two plainclothes Drug Enforcement Administration ("DEA") agents, Christopher Hacias and Keith Leoni, who were conducting an unrelated undercover operation. As the agents drove away from their surveillance through an alley in their unmarked car, a car (not related to the defendants) stopped at the mouth of the alley and blocked the DEA agents' progress. At the same time, the defendants, now on foot, approached the agents' car. Agent Hacias, who was in the passenger seat, yelled that he and his partner were police officers, and then warned again that they were federal agents. Undeterred, the defendants continued to advance toward the agents' vehicle, yelling "Get them, shoot them, fuck them up."

Karda then walked directly up to the passenger side of the car and through the open window struck a violent blow to Agent Hacias's face with a blunt instrument. This attack left Agent Hacias with a black eye and a bruised face, but no more severe injury. Fearing another attack, Agent Leoni temporarily drove away from the area, followed by the four screaming defendants. The agents, after making certain that Agent Hacias was not seriously injured, immediately returned to the alley to arrest their assailants. They saw three of the men on one side of the alley and the fourth, who they later identified as Sorensen, on the opposite side holding a large piece of cement. Cheered on and encouraged by his crew, Sorensen threw the block of concrete at the agents' car, shattering but not piercing the windshield. Within an hour, the Chicago Police Department arrested all four defendants.

Karda and Sorensen pleaded guilty in Cook County Circuit Court to charges of armed robbery and aggravated battery for their role in the attack at the convenience store and the theft of their victim's car. For this crime, each received a seven year term of imprisonment. With regard to the attack on the federal officers, a federal grand jury returned a three count indictment against Sorensen, Karda, Sliwa and Moritz. Karda was admitted to pre-trial release on October 30, 1991, but was arrested three days later as he attempted to elude police in a high speed chase in another stolen vehicle. Accordingly, his pre-trial release was revoked. For this activity, Karda was convicted on a state charge of aggravated possession of a stolen vehicle and sentenced to a term of five years to be served consecutive to his armed robbery sentence.

---

* The Honorable Donald E. Walter, of the United States District Court for the Western District of Louisiana, sitting by designation.

Both defendants also pleaded guilty to assaulting federal officers and using a deadly and dangerous weapon in the commission of that offense. 18 U.S.C. §§ 2, 111. The district court held an evidentiary hearing to determine the scope of the defendants' relevant conduct as well as the applicability of Sentencing Guideline enhancements for use of a dangerous weapon and assault of an official victim. For Karda, the court determined the base offense level at 15 for Aggravated Battery, enhanced the base by 4 points for the use of a dangerous weapon (a blunt instrument), 2 points for the victim's injury and 3 points for the victim's official status. The court reduced the offense level by 3 points for acceptance of responsibility and timely notification of an intention to plead, resulting in a total offense level of 21. Finding a criminal sentencing history of III, the court determined a range of 46 to 57 months and sentenced Karda to 52 months in prison, to be served consecutively to the completion of his undischarged state terms of incarceration.

For Sorensen, the court also set the base offense level at 15. The court enhanced the level by 4 for his use of a dangerous weapon (cement block), and 3 additional points for his knowledge of the victims' official status. The court then reduced Sorensen's base level by 3 points for his acceptance of responsibility and timeliness in pleading guilty, resulting in a total offense level of 19. It found a criminal history category of VI, resulting in a range of 63 to 78 months. Although the court could have departed upward because of Sorensen's extraordinarily serious criminal history, it did not and sentenced Sorensen to a term of 70 months imprisonment and 3 years supervised release, to be served consecutively to his undischarged state terms of incarceration. This appeal followed.

## II.

Sorensen and Karda argue that the district court erred in its sentencing determinations. First, both defendants contend that the court miscalculated their sentences by not applying the methodology of Application Note 3 to Policy Statement § 5G1.3 for the imposition of concurrent or consecutive terms of impris-

onment. Second, Sorensen maintains that the district court improperly applied § 3A1.2(b) by enhancing his sentence three levels for assaulting a law enforcement officer. Third, Sorensen contends that the district court improperly enhanced his sentence by four levels for the use of dangerous weapon under § 2A2.2(b)(2)(B).

### A.

Sorensen and Karda first argue that the district court abused its discretion in making their federal prison terms consecutive to, rather than concurrent with, their state prison terms. While the defendants present their claims in somewhat different manners, their arguments boil down to the same fundamental challenge: that the district court erred in not properly applying the methodology described in Application Note 3 to U.S.S.G. Policy Statement § 5G1.3(c).

Both the United States Code and the Sentencing Guidelines address the proper imposition of consecutive and concurrent sentences. 18 U.S.C. § 3584(a) states in relevant part:

> [I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively.... Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.

The Sentencing Guidelines provide further guidance for determining whether to apply a concurrent or a consecutive sentence. Section 5G1.3(b) states:

> If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

Section 5G1.3(c), a Policy Statement, further states: "in any other case, the sentence of the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to

achieve a reasonable incremental punishment for the instant offense."

The Commentary to this Policy Statement explains:

> ... To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. It is recognized that this determination frequently will require an approximation. Where the defendant is serving a term of imprisonment for the state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines.... It is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process. Additionally, this methodology does not, itself, require the court to depart from the guideline range established for the instant federal offense. Rather, this methodology is meant to assist the court in determining the appropriate sentence.... Generally, the court may achieve an appropriate sentence through its determination of an appropriate point within the applicable guideline range for the instant federal offense, combined with its determination of whether that sentence will run concurrently or consecutively to the undischarged term of imprisonment.

U.S.S.G. § 5G1.3 application note 3.

Relying on this commentary to § 5G1.3(c), the defendants maintain that the district court erred in not applying the methodology set forth in that guideline. The defendants argue that a proper application of the § 5G1.3 methodology would result in federal sentences that run concurrent with, rather than consecutive to, their undischarged state terms.

The government responds in several ways. First, it argues that the defendants have waived this claim by failing to invoke the § 5G1.3(c) procedure at the sentencing hearing. Second, the government contends that even if it is not waived, the argument is not appealable because it does not constitute an "incorrect application of the sentencing guidelines" within the meaning of 18 U.S.C. §§ 3742(a)(2) and (f)(1). Third, the government maintains that the application of the procedure was not feasible because it would have been unduly burdensome for the court to apply. Finally, the government addresses the methodology claim on the merits and insists that even if the district court had applied it, the result would have been the same, thus rendering any error harmless.

As for the government's waiver claim, our reading of the record indicates that the defendants did raise the methodology argument in both their sentencing memoranda and at the hearing in front of the district court, and therefore did not waive it for appeal.

■■■ Second, contrary to the government's brief argument regarding the issue's appealability, the defendants can challenge the district court's failure to apply the § 5G1.3 methodology. *Cf. United States v. Brassell*, 49 F.3d 274, 278 (7th Cir.1995) (vacating and remanding in part for the district court's failure to consider the § 5G1.3 methodology). Furthermore, where a policy statement interprets a guideline and "tell[s] the sentencing judge *how* to determine the applicable guideline range," the policy statement retains its "authoritative character." *United States v. Hill*, 48 F.3d 228, 231 (7th Cir.1995) (emphasis added); *see also Stinson v. United States*, — U.S. —, —, 113 S.Ct. 1913, 1917, 123 L.Ed.2d 598 (1993) (regarding the binding effect of application notes, "the principle that the Guidelines Manual is binding on federal courts applies as well to policy statements"); *Williams v. United States*, 503 U.S. 193, 200, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992) (concluding that the Sentencing Commission's commentary interpreting and explaining specific guidelines, unless inconsistent with the guideline itself or with a federal statute, is authoritative even if it appears in a policy statement rather than an application note). The court must therefore apply it and its

failure to do so is the same as not applying any other guideline.

■ Third, although the guidelines indicate that "[i]t is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process," U.S.S.G. § 5G1.3(c) application note 3, we do not believe that the use of the procedure would have been too complicated or cumbersome to undertake. The defendants' crimes were not very esoteric or intricate; in fact, the underlying state crimes were armed robbery and aggravated assault, offenses with relatively simple elements and federal equivalents. We are thus only left with the defendants' arguments (and the government's responses) regarding the merits of the district court's failure to apply the sentencing methodology.

■ As a threshold matter, we must determine whether the district court was required to apply the methodology of § 5G1.3.[1] Generally, the district court must at least consider the methodology of § 5G1.3. *Brassell,* 49 F.3d at 278 ("[T]he district court is expected to address the methodology set forth in U.S.S.G. § 5G1.3, comment. (n. 3)."). The district court, however, need not follow this procedure in all cases and "does retain the discretion to determine that this methodology does not yield an appropriate incremental punishment and to impose another sentence." *Id.* In fact, "because the Guidelines permit the district court to exercise its discretion, the imposition of a sentence not yielded by the methodology outlined in the commentary does not constitute an upward departure." *Id.* at 279, n. 3. A court must provide a valid reason for its choice not to follow the guideline methodology. *Id.* ("If the court demonstrates that it has considered the commentary's methodology and states a valid reason for employing a different one, we will not review its discretionary decision to impose a consecutive sentence for the purpose of achieving a reasonable incremen-

tal penalty.") (quoting *United States v. Redman,* 35 F.3d 437, 441 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 922, 130 L.Ed.2d 802 (1995)).

In the instant case, it does not appear from the record before us that the district court considered the guideline methodology set forth in the commentary to § 5G1.3. Because *Brassell* requires at the very least a recognition and consideration of the § 5G1.3 methodology, we vacate and remand for sentencing consistent with this guideline. Of course, on remand the court may choose not to apply the methodology, and need only state the reason for this refusal. And, if the court does apply the methodology, it can appropriately reach the same result it did earlier.

**B.**

■ Sorensen individually argues that the three-level increase to his base level offense due to the designation of the DEA agents as "Official Victims" was improper double-counting in that the victims' status had already been calculated into Sorensen's base offense level. Furthermore, he maintains that there was insufficient evidence for the district court to find that Sorensen *knew* that his victims were law enforcement officers. We review the court's interpretation of the guidelines *de novo, United States v. Tai,* 41 F.3d 1170 (7th Cir.1994), and its findings of fact for clear error. *United States v. Weaver,* 8 F.3d 1240, 1244 (7th Cir.1993).

Under Guideline § 3A1.2(b), a defendant's offense level must be enhanced if:

> during the course of the offense or immediate flight therefrom, the defendant or person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person is a law enforcement officer, assaulted such

---

1. The defendants also ask us to determine which subsection of § 5G1.3 applies, arguing that subsection (a) does not apply, while subsection (b) does because the conduct underlying their undischarged state terms of imprisonment—aggravated battery and armed robbery (outside the conve-

nience store)—"has been fully taken into account in the determination of the offense level for the instant offense." U.S.S.G. § 5G1.3(b). In that we are remanding for resentencing, we leave it to the district court to answer this question.

officer in a manner creating a substantial risk of serious bodily injury.

Application Note 3 to this Guideline cautions:

> Do not apply this adjustment if the offense guideline specifically incorporates this factor. In most cases, the offenses to which subdivision (a) will apply will be from Chapter Two, Part A (Offenses Against the Person.) The only offense guideline in Chapter Two, Part A that specifically incorporates this factor is § 2A2.4.

■ We recently rejected Sorensen's double-counting argument in *United States v. Woody*, 55 F.3d 1257, 1274 (7th Cir.1995). In *Woody*, as here, the defendant argued that the district court's three point increase in his offense level because the victim was a government officer was impermissible double-counting because his conviction under 18 U.S.C. § 111 required a forcible assault on a federal officer. This court dismissed that argument and held:

> The Sentencing Guidelines specifically call for an increase in a defendant's adjusted offense level if the victim of the offense "was a government officer or employee; ... and the offense of conviction was motivated by such status; ..." This increase does not amount to impermissible double counting because the Guideline requires a higher level of culpability, ie., the defendant's actions must have been "motivated" by the victim's official status.

*Id.* (quoting U.S.S.G. § 3A1.2(a)) (internal citation omitted); *see also United States v. Park*, 988 F.2d 107, 110 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 226, 126 L.Ed.2d 182 (1993); *United States v. Padilla*, 961 F.2d 322, 327 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 138, 121 L.Ed.2d 91 (1992) ("the guideline enhances for an additional factor that will not be present in every conviction under § 111"); *United States v. Sanchez*, 914 F.2d 1355 (9th Cir.1990), *cert. denied*, 499 U.S. 978, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991); *cf. United States v. Pacione*, 950 F.2d 1348, 1356 (7th Cir.1991) (rejecting similar argument for base offense level calculated under § 2A6.1), *cert. denied*, —— U.S. ——, 112 S.Ct. 3054, 120 L.Ed.2d 920 (1992).

■ As for Sorensen's challenge to the district court's factual findings, we will not disturb them because they are not clearly erroneous. *See Weaver*, 8 F.3d at 1244; *United States v. Atkinson*, 979 F.2d 1219, 1222 (7th Cir.1992). Sentencing under § 3A1.2 requires in part a showing that the defendant knew or had reasonable cause to believe that the person assaulted was a government official. *See* U.S.S.G. § 3A1.2(b); *United States v. Swoape*, 31 F.3d 482, 483 (7th Cir.1994). Sorensen claims that the government failed to establish that he knew of his victims' official status at the time he assaulted them. He maintains that he believed that the plainclothes agents driving an unmarked car were members of a rival street gang who had invaded his gang's turf. The district court, however, examined the testimony of the agents, made credibility determinations, and found that the agents loudly and repeatedly identified themselves directly to Sorensen as law enforcement officers. The court also determined that Sorensen heard the agents' announcement of their official status. Sorensen has failed to show, and we cannot find, anything in the record that leaves us with the definite and firm conviction that these findings are mistaken. *Weaver*, 8 F.3d at 1245.

### C.

Sorensen also contends that the district court improperly enhanced his offense level for the use of a dangerous weapon under U.S.S.G. § 2A2.2(b)(2)(B). At sentencing, the district court judge classified his offense as "Aggravated Assault," pursuant to § 2A2.2, and then imposed a four-level enhancement under § 2A2.2(b)(2)(B) because Sorensen used a concrete block as a dangerous weapon. Sorensen asserts that the four-level enhancement to his base offense level was impermissible double-counting since the use of the dangerous weapon already increased his base offense level by making the crime an *aggravated* assault. Because this issue involves a purely legal interpretation of the Guidelines, our review is *de novo*. *See United States v. Lozoya–Morales*, 931 F.2d 1216, 1218 (7th Cir.1991).

Section 2A2.2 of the Guidelines provides the framework for calculating the offense level for aggravated assault crimes. This provision sets a base level of 15 for an offense qualifying as a "aggravated assault." § 2A2.2(a). The section also establishes an enhancement schedule that is triggered by several aggravating factors. Applicable to the instant case, the Guidelines indicate that "if a dangerous weapon ... was otherwise used, increase by 4 levels." U.S.S.G. § 2A2.2(b)(2)(B).

Sorensen does not challenge the conclusion that the concrete block was a "dangerous weapon." Rather, he claims that the mere possession of the concrete block would not have qualified him for the application of the aggravated assault guideline and that it was his use of the block that transformed the ordinary object into a dangerous weapon, and transformed a minor assault into an "aggravated" one, thus triggering the guideline. Relying on *United States v. Hudson*, 972 F.2d 504, 506 (2d Cir.1992), he also contends that it was the same use of the weapon that triggers the enhancement—thus resulting in improper double-counting.

 We do not agree with Sorensen's interpretation of § 2A2.2. Application note 1 to § 2A2.2 defines "aggravated assault" as "a felonious assault that involved (a) a dangerous weapon with the intent to do bodily harm (*i.e.* not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony." The mere possession of the dangerous weapon with an "intent to do bodily harm" and the fact that the assault offense "involved" a dangerous weapon, qualify an assailant for application of the aggravated assault guideline. It is only when the assailant then uses this dangerous weapon that he qualifies for the enhancement under § 2A2.2(b). As the Fourth Circuit concluded in *United States v. Williams*, 954 F.2d 204, 206 (4th Cir.1992), when addressing this precise question (with regard to a metal chair):

> [t]he base level set by § 2A2.2 applies to this assault offense because it "involved" a dangerous weapon, but the four-level adjustment would apply only if the defendant 'used' the dangerous weapon. Thus, a defendant could be guilty of assault with a dangerous weapon without ever using the weapon—the defendant may threaten and intend to use the weapon but never have the opportunity to do so.

Like the Fourth Circuit, we too believe that "the dangerous weapon adjustment rationally reflects the Guideline's graduated adjustment scheme." *Id.; United States v. Reese*, 2 F.3d 870, 896 n. 32 (9th Cir.1993), *cert. denied*, ——— U.S. ———, 114 S.Ct. 928, 127 L.Ed.2d 220 (1994); *United States v. Newman*, 982 F.2d 665, 674 (1st Cir.1992), *cert. denied*, ——— U.S. ———, 114 S.Ct. 59, 126 L.Ed.2d 28 (1993). *But compare Hudson*, 972 F.2d at 506 (choosing not to follow *Williams* and concluding that the use of a noninherently dangerous object (a car) as a dangerous weapon makes the assault aggravated and thus cannot be utilized to enhance a sentence under § 2A2.2). Thus, in light of the language of the guideline and because we agree with the approach of the Fourth Circuit, the district court did not engage in impermissible double-counting and thus properly enhanced Sorensen's sentence for the use of a dangerous weapon.[2]

For the foregoing reasons, the district court's decision is VACATED in part, AFFIRMED

---

**2.** Sorensen also challenges the district court's conclusions that, under U.S.S.G. § 1B1.3, Karda's assault on Agent Hacias was "relevant conduct" to Sorensen's assault on the agents with the concrete block. Sorensen asserts that the district court improperly considered Karda's striking Agent Hacias as a basis for enhancing Sorensen's offense level for the use of a dangerous weapon. While the record is somewhat ambiguous as to how the district court used § 1B1.3 (perhaps as a means to establish the base offense level of Aggravated Assault and not simply as a method of enhancement), both Sorensen and the government understood the district court to be using this section as an alternative ground for enhancing the offense level. We will not disturb a district court's factual finding that certain activity constitutes "relevant conduct" under § 1B1.3 unless it is clearly erroneous. *United States v. Bolin*, 35 F.3d 306, 309 (7th Cir.1994); *United States v. Sykes*, 7 F.3d 1331, 1335 (7th Cir.1993). However, because we find that the district court did not err in imposing the four-level enhancement for Sorensen's own use of the concrete block, we need not review the court's findings on the relevant conduct grounds.

in part and REMANDED for consideration of the § 5G1.3 sentencing methodology.