# In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2530

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WILLIAM A. BEITH,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:02-CR-49—**Rudy Lozano**, *Judge.*

———————

ARGUED DECEMBER 3, 2003—DECIDED MAY 16, 2005

———————

Before FLAUM, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges*.

WILLIAMS, *Circuit Judge*. William A. Beith, the former
principal of Liberty Baptist Bible Academy, who pled guilty
to fleeing from Indiana to Nevada so that he could continue
his illicit sexual relationship with his eleven-year-old
student, challenges various Federal Sentencing Guidelines
determinations made by the district court. We find that the
defendant was sentenced under the appropriate offense
guideline relating to the victim's age and that the use of the
victim's age to enhance the defendant's offense level under
that new offense guideline does not constitute impermissi-

ble double counting. However, the record does not support the district court's decision to apply an enhancement for abduction and the victim's vulnerability, and so we agree that the defendant must be resentenced.

# I. BACKGROUND[1]

William A. Beith was born May 21, 1972. At age 19, he began teaching at the Liberty Baptist Bible Academy (Academy) in Lake Station, Indiana. He received his bachelor's degree in Christian Education in 1995, and served as principal of the Academy for approximately two years prior to the charges in this action.

Beith first met G.M. when she began attending the Academy in the third grade at the age of 8 years. In the immediate years thereafter, Beith developed a relationship with G.M. that he considered to be "close," yet not so close as to transgress appropriate bounds between teacher and student. The dynamic of their relationship, however, changed around February 2001, when G.M. was 11 years old and in the sixth grade. G.M. approached Beith, then 29 years old, complaining of problems at home. In particular, she told him that her father had touched her inappropriately and was perhaps "peeping" at her. In response, Beith directed G.M.'s teacher, Suzanne Waddell, to set up a meeting with G.M.'s mother to discuss the allegations. After learning of G.M.'s allegations at the meeting, G.M.'s mother confronted her husband. The veracity of G.M.'s allegations regarding her father remain marginally in doubt.[2]

---

[1] As Beith pled guilty, we have assembled the facts, as did the district court, from the pleadings, grand jury testimony, exhibits, FBI reports, and presentencing report.

[2] The bulk of the evidence suggests that, when confronted by G.M.'s mother, G.M.'s father did not deny the allegations, but per-

(continued...)

After the meeting with G.M.'s mother, Beith's contact with G.M. became more frequent. Beith allowed G.M. and other students to visit him in his office during recess and lunch breaks, and subsequently encouraged G.M. to come to his office to talk alone. As a result of spending time with Beith during the course of the school day, G.M. would be late for class at least two or three times a week. On such occasions, Beith would provide G.M. with notes excusing her tardiness. Though G.M.'s teacher and other members of the faculty became troubled by the amount of attention Beith was lavishing on G.M., Beith sought to assuage those concerns by explaining he was merely counseling G.M. about her family problems.

Beith began taking G.M. to his home after school. On one occasion, following a math tutoring session, Beith took G.M. and a fellow female student out for pizza and then to his house. After inviting them inside, the girls changed clothes in his bedroom. Beith videotaped them as they tried on his jewelry and played with his computer. The camera predominantly focused on G.M.'s private parts, and captures Beith expressing a sexual attraction to the girls. On subsequent occasions, Beith brought G.M. alone to his house to engage in kissing and fondling. Then he began to increase the intimacy of the relationship by disclosing confidences about his sexual experience and loss of virginity.

On April 23, 2001, Beith was scheduled to take several students, including G.M., on a church-sponsored retreat at a camp in Michigan. During the early morning hours of April 24, 2001, while on the retreat, Beith allowed G.M. and

---

[2] (...continued)
suaded his wife that his conduct occurred as G.M. had attempted to wake him from an alcohol-induced slumber. However, Henry Waddell, the husband of G.M.'s teacher, testified before the grand jury that his wife had told him that G.M. had recanted these allegations in the presence of her parents.

one of her friends into his cabin and onto his bed with him. In the presence of the friend, Beith fondled and kissed G.M. In the early morning of the next day, G.M. came to Beith's cabin alone, where he invited her into his bed and attempted to have unprotected sexual intercourse with her. During the drive back to Indiana, Beith sat with G.M. on the bus and began discussing with her the possibility of running away together.

On April 27, 2001, Beith picked G.M. up from her house after she had been left home alone. He took her to his residence, where he again fondled and kissed her. He also renewed discussions of leaving the Academy and running away with her, revealing (in either this conversation or a previous one) that his destination was Las Vegas, Nevada. At the end of the evening, around 11:00 p.m., he dropped her off in the alley behind her home.

Soon thereafter, the illicit relationship would be exposed. During a family birthday dinner at a local restaurant on April 29, 2001, G.M. excused herself from the table to call Beith. During the conversation, Beith again asked her to run away with him. Upon returning to the table after the call, G.M. was pressed by a young family friend to reveal whom she had called. In response, G.M. disclosed to the friend the intimate details of her relationship with Beith. The young friend was so disturbed by the revelation that she passed along the information to G.M.'s parents, who in turn took G.M. to the hospital the next day to be examined for sexual molestation. In the course of the examination, G.M. informed a nurse that Beith had indeed attempted sexual intercourse with her. That information was then relayed to G.M.'s parents, who subsequently took G.M. to the Lake Station Police Department to be interviewed. At the conclusion of the interview, G.M. and her parents understood that the police intended to question and possibly arrest Beith.

After leaving the police station, G.M.'s parents stopped at a Wal-Mart store. While at the store, G.M. slipped away

from her parents to call Beith and warn him that the police were on to him and would come calling later that day. In response, Beith told G.M. that he was leaving town and again asked that she come with him. He then arranged for her to meet him at a location near the Wal-Mart. Once at the designated meeting ground, G.M. got into Beith's vehicle without any resistance and the two drove away headed for Las Vegas.

Along the way to Las Vegas, Beith made several stops allowing G.M. to shop. He also made several stops for overnight stays at hotels, where he repeatedly engaged G.M. in unprotected sexual intercourse. The two also discussed having a baby together, as Beith thought it a "good idea." In addition, he suggested to G.M. on more than one occasion that perhaps he should take her home and then kill himself.

On May 8, 2001, Beith was arrested by Las Vegas Police in the parking lot of a hotel in which he was staying with G.M. Later, during an interview with the FBI, Beith admitted taking G.M. and engaging in inappropriate sexual contact with her, but insisted that it was G.M. who had affirmatively pursued the relationship. He also stated that G.M. was at all times during their travels free to leave him.

A federal grand jury sitting in the Northern District of Indiana returned a two count indictment charging Beith with aggravated sexual abuse in violation of 18 U.S.C. §§ 2241(c) and 2246. Subsequently, on or about June 21, 2002, the United States Attorney's Office for the Northern District of Indiana returned a one count information against Beith, charging him with transporting a child under the age of 18 across state lines with the intent to engage in prohibited sexual contact in violation of 18 U.S.C. § 2423(b). On July 1, 2002, in consideration for the government's motion to dismiss the charges of aggravated sexual abuse, Beith pled guilty to the charges under 18 U.S.C. § 2423(b) and admitted to knowing that G.M. was 11 years old, kiss-

ing and fondling her on several occasions, attempting to have sexual intercourse with her at the retreat, driving her from Indiana to Nevada, and engaging her in sexual intercourse throughout their travels. Section 2423(b) provides for a maximum sentence of 180 months.

A presentence report (PSR) was prepared using the 2001 edition of the United States Sentencing Guidelines, recommending that the district court apply a base offense level of 27 for the violation of 18 U.S.C. § 2423(b) pursuant to U.S.S.G. § 2A3.1 (by way of the criminal sexual assault cross reference, U.S.S.G. § 2A3.2(c)(1), triggered when the victim is under the age of 12). It also recommended a 4-level enhancement pursuant to § 4A3.1(b)(2)(A), applicable where the victim had not attained the age of twelve years; a 2-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(3), applicable where the victim was in the custody, care, or supervisory control of the defendant; a 4-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(5), applicable where the victim was abducted; and a 2-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1), applicable where the victim was unusually vulnerable. Altogether, the PSR recommended a total offense level of 39.

On the day of the sentencing hearing, Beith withdrew all his objections to the PSR, with the exception of those asserting double counting in the application of U.S.S.G. § 2A3.1 to his offense conduct; the application of the abduction enhancement; and the application of the vulnerable victim enhancement. He did not object to the enhancement based on his custody, care, or supervisory control of G.M., nor did he object to the factual statements in the PSR, which the court adopted.

Beith was sentenced on May 28, 2003, and the district court rejected each of his outstanding objections to the increase of his sentence, specifically concluding that calculation of his sentence under U.S.S.G. § 2A3.1 would not constitute double counting. It further found, by a preponderance of the

evidence, that the § 2A3.1(b)(5) abduction enhancement should be applied to Beith's guideline calculation because his conduct toward G.M. amounted to "inveigling and grooming." The court also found, by a preponderance of the evidence, that the § 3A1.1(b)(1) vulnerable victim enhancement applied because Beith had pursued the illegal relationship with G.M. after being told that her father had subjected her to sexual misconduct. The district court then granted Beith a 3-point reduction for his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, leaving him with a total offense level of 36. Falling within criminal history category I, the Guidelines provided a sentencing range of 188 to 235 months imprisonment. However, the statutory maximum sentence for his crime of conviction was 180 months; therefore, the court sentenced him to the statutory maximum term. On appeal, Beith contests all enhancements save the 2-point enhancement for having supervisory control over the victim.

## II. ANALYSIS

Beith raises several challenges to his sentence, which primarily attack the propriety of the district court's application of the United States Sentencing Guidelines. He also contends that his sentence is unconstitutional in light of the Supreme Court's recent pronouncement in *United States v. Booker*, 125 S. Ct. 738 (2005). We begin by addressing the district court's application of certain guidelines provisions.

### A.  Application of U.S.S.G. § 2A3.1 Was Appropriate

Beith first asserts that he was improperly sentenced under § 2A3.1 contending that his crime is properly characterized as statutory rape and therefore falls within the purview of § 2A3.2. This assertion should be rejected for two reasons. First, the criminal sexual abuse cross reference expressly

directed the district court to apply § 2A3.1, as opposed to
§ 2A3.2, because Beith committed sexual abuse pursuant to
§ 2241(c) and G.M. "had not attained the age of 12 years."
U.S.S.G. § 2A3.2(c)(1). A defendant who pleads guilty to a
violation of 18 U.S.C. § 2423(b)[3] *may* be sentenced under
the statutory rape offense guideline, U.S.S.G. § 2A3.2, which
applies to sexual abuse of a minor under the age of 16 and
sets the base offense level at 24. *See* U.S.S.G. § 2A3.2(a)(1)
(defining sexual abuse as "the commission of a sexual act" or
"sexual contact"). However, under § 2A3.2's cross reference,
"if the offense involved criminal sexual abuse or attempt to
commit criminal sexual abuse (as defined in 18 U.S.C.
§ 2241 or § 2242)" or "[i]f the victim had not attained the age
of 12 years," the defendant must be sentenced pursuant to
§ 2A3.1, which carries a base offense level of 27. U.S.S.G.
§ 2A3.2(c)(1).[4] The cross reference also explicitly negates the
defense of consent. *Id.* Beith cites *United States v. Morris*, 204
F.3d 776, 777-78 (7th Cir. 2000), for the proposition that
violations of the federal statutory rape statute, § 2423(b),
absent the use of force, require a defendant to be sentenced
under § 2A3.2. However, the victim in *Morris* was over the
age of 12 and therefore did not trigger the cross reference.

---

[3] Title 18 U.S.C. § 2423(b) states "[a] person who travels in in-
terstate commerce . . . for the purpose of engaging in any illicit
sexual conduct with another person shall be fined under this title
or imprisoned not more than 30 years, or both." "Illicit sexual con-
duct" is defined as "a sexual act . . . with a person under 18 years
of age . . . ." 18 U.S.C. § 2423(f).

[4] Criminal sexual abuse encompasses both "intent to engage in a
sexual act with a person who has not attained the age of 12 years,"
as well as "knowingly" engaging in such conduct. 18 U.S.C.
§ 2241(c). Section 2241, however, also encompasses aggravated
sexual assault accomplished by force, threat, or other means. *Id.*
at § 2241(a) & (b). Section 2242 prohibits sexual abuse of one "in-
capable of appraising the nature of the conduct" or "physically
incapable of declining" to take part in the act. *Id.* at § 2242.

*Id.* at 777. As G.M. was 11 years of age during the commission of the crime, *Morris* is inapposite.

Second, though Beith pled guilty to a violation of § 2423(b) (traveling with a minor for the purpose of engaging in sexual intercourse) as opposed to § 2241(c) (criminal sexual abuse), his offense of conviction is not determinative of his offense guideline. *See United States v. Angle*, 234 F.3d 326, 345 (7th Cir. 2000) ("[T]he term 'offense' is defined broadly to include not only 'the offense of conviction' but also all conduct deemed relevant by §1B1.3."). *See also* U.S.S.G. § 1B1.2(a) ("[I]n the case of a plea agreement . . . containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two applicable to the stipulated offense.").[5] The district court was free to consider relevant conduct—to which Beith admitted—when determining which offense guideline most appropriately reflected the scope of his criminal activity. *See* U.S.S.G. § 1B1.3; *United States v. Vang*, 128 F.3d 1065, 1073 (7th Cir. 1997) (affirming use of § 2A3.1 as offense guideline for sentencing defendant convicted of violating § 2324(b) because defendant used force during the commission of the sexual assault meriting application of § 2A3.1 as opposed to § 2A3.2); *United States v. Pollard*, 986

---

[5]  In his plea agreement Beith acknowledged that he engaged in sexual intercourse with G.M. who was 11 years of age, which constitutes criminal sexual assault as defined by 18 U.S.C. § 2241(c). *See United States v. Morgan*, 164 F.3d 1235, 1238-39 (9th Cir. 1999) (upholding the applications of § 2A3.1 when the defendant pleaded guilty to violating 18 U.S.C. §§ 1153(a) and 2244(a), but admitted in his plea agreement that he engaged in sexual intercourse with the victim while she was passed out and therefore incapacitated); *United States v. Lucas*, 157 F.3d 998, 1002-03 (5th Cir. 1998) (reversing a district court's determination to apply § 2A3.3 and remanding for application of § 2A3.1 as the defendant's stipulated conduct amounted to a violation of 18 U.S.C. § 2241 based on his use of force).

F.2d 44, 47 (3d Cir. 1993) (affirming use of § 2A3.1 guideline when defendant convicted of kidnaping also sexually assaulted victim). Therefore, based on § 2A3.2's cross reference as well as the scope of relevant conduct to which he admitted, the district court could properly sentence Beith pursuant to § 2A3.1.

### B.  The District Court Did Not Impermissibly Double Count

Having found that Beith could properly be sentenced under § 2A3.1, we now turn to Beith's argument that the use of the victim's age to support both the application of § 2A3.1, which carries a higher base offense level, and an enhancement pursuant to § 2A3.1(b)(2)(A), amounts to impermissible double counting. Beith's argument is superficially attractive in that G.M.'s age had the substantive effect of raising his base offense level three points (if G.M. were over the age of 12, the cross reference would have been inapplicable and Beith's base offense level would have been 24 pursuant to § 2A3.2) and then subsequently enhancing his offense level four points based on that same factor.[6] The district court rejected Beith's challenge to his sentence, reasoning that the Guidelines must be read as a whole and

---

[6]  Several of our sister circuits have rejected parallel double counting arguments. *See United States v. Cole, III*, 359 F.3d 420, 426-28 (6th Cir. 2004) (applying § 2A3.1 as offense guideline, pursuant to kidnaping cross reference, § 2A4.1(b)(7)(A), because the victim was abducted and sexually assaulted and then enhancing defendant's sentence under § 2A3.1(b)(5) for abduction); *United States v. Archdale*, 229 F.3d 861, 868-69 (9th Cir. 2000) (reasoning that district court properly sentenced defendant under § 2A3.1, pursuant to the sexual assault cross reference in § 2A3.2(c)(1) based on the use of force and also properly enhanced defendant's sentence under § 2A3.1(b)(1) for the use of force); *United States v. Lewis*, 115 F.3d 1531, 1536-37 (11th Cir. 1997) (same as *Cole III*).

explicitly permit G.M.'s age to be used twice. *See* U.S.S.G. §§ 1B1.1, application note 4(A), (B), & 1B1.5(a).

We reject appellant's argument for several reasons. First, the plain language of the Guidelines expressly directs this result. Second, the application of § 2A3.1 (base offense level of 27) over § 2A3.2 (base offense level of 24) does not amount to an "increase" or enhancement, as the Guidelines must be applied as a whole. Finally, the bar on double counting is not implicated because the Sentencing Commission in setting the base offense level for § 2A3.1 did not account for the victim's age.

Generally, impermissible double counting occurs when identical conduct justifies two upward adjustments under the Guidelines. *United States v. Haines*, 32 F.3d 290, 293 (7th Cir. 1994). Put another way, a district court may not describe the same conduct in two different ways to justify two upward adjustments. *United States v. Salyers*, 160 F.3d 1152, 1163-64 (7th Cir. 1998); *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997); *United States v. Compton, III*, 82 F.3d 179, 183 (7th Cir. 1996). This court recognizes that some factual overlap may occur, "so long as there is sufficient factual basis for each [upward adjustment]," *Haines*, 32 F.3d at 293-94, and the court does not "dr[a]w from the same well," *United States v. Kopshever*, 6 F.3d 1218, 1224 (7th Cir. 1993). "A district court does not engage in double counting when it enhances a defendant's sentence for separate elements of the same act . . . ." *United States v. Burke*, 125 F.3d 401, 405 (7th Cir. 1997). *Compare Kopshever*, 6 F.3d at 1224 (finding double counting where the district court enhanced defendant's sentence based on the vulnerability of the victims, pursuant to § 3A1.1, and the unusually serious psychological harm suffered by the victims, pursuant to § 5K2.3 as both enhancements involved the same underlying conduct) *with United States v. Myers*, 355 F.3d 1040, 1044 (7th Cir. 2004) (rejecting double counting argument of a defendant convicted of knowingly receiving materials

depicting a child engaged in "sexually explicit conduct," pursuant to 18 U.S.C. § 2252, as two-point enhancement, pursuant to § 2G2.2(b)(1), was premised on child's prepubescence and the four-point enhancement, pursuant to § 2G2.2(b)(3), was premised on the "sadistic conduct" conveyed in video of child which depicted actions which would inflict pain upon the child).

"[D]ouble counting is permissible unless the guidelines expressly provide otherwise or a compelling basis exists for implying such a prohibition." *United States v. Harris*, 41 F.3d 1121, 1123 (7th Cir. 1994). According to the plain language of the Guidelines, as discussed above, a defendant must be sentenced pursuant to § 2A3.1 if the victim of his sexual abuse is under 12 years of age and then subsequently enhanced four points based on the same element. U.S.S.G. § 2A3.1(b)(2)(A). Absent a clear statement by the Guidelines that such an element may not be used twice, we will apply the Guidelines as written. *See United States v. Jimenez*, 897 F.2d 286, 287 (7th Cir. 1990) (reasoning that "where the Guidelines except an element of the crime from enhancing a sentence, their intent is expressly stated" and listing § 3A1.1 app. note. 2, § 3B1.3, and § 3C1.1 as examples of express prohibition).

Moreover, it is perfectly rational for the Guidelines to treat sexual assault against victims under the age of 12 with more severity.[7] By enhancing a defendant's base offense level two points for a victim between the age of 12 and

---

[7] In *United States v. Shannon*, 110 F.3d 382, 387 (7th Cir. 1997) (en banc), this court recognized the increased dangers associated with a victim so young. We reasoned that "[a] 13 year old is unlikely to have a full appreciation of the disease and fertility risks of intercourse, an accurate knowledge of contraceptives and disease-preventive measures, and the maturity to make a rational comparison of the costs and benefits of premarital intercourse." *Id.*

16, § 2A3.1(b)(2)(B), and four points for a victim under the age of 12, § 2A3.1(b)(2)(A), the guidelines reflect a "graduated adjustment scheme," *United States v. Sorensen*, 58 F.3d 1154, 1161 (7th Cir. 1995), which treats egregious conduct more harshly. *See* U.S.S.G. § 2A3.1 cmt. background ("An enhancement is provided when the victim is less than sixteen years of age. An *additional* enhancement is provided where the victim is less than twelve years of age.") (emphasis added).

Beith's argument that his offense level was "increased" twice based on the victim's age must also be rejected. As the district court noted, the Guidelines must be read as a whole. "A cross reference (an instruction to apply another offense guideline) refers to the entire offense guideline (*i.e.*, the base offense level, specific offense characteristics, cross references and special instructions)." U.S.S.G. § 1B1.5(a). Application of the cross reference or the determination of the appropriate offense guideline based on the relevant conduct inquiry does not "increase" a defendant's offense level. It merely sentences him under the offense guideline which reflects the full scope of his conduct. U.S.S.G. §§ 1B1.1 app. note 4(A). *Accord United States v. Sanchez*, 354 F.3d 70, 78-79 (1st Cir. 2004) (reasoning that once a court deems a cross reference applicable, it must proceed to the new offense guideline and apply it as written); *United States v. Valdez-Torres*, 108 F.3d 385, 389 n.7 (D.C. Cir. 1997) (rejecting argument that applying proper offense guideline with a higher base offense level may be characterized as "increasing" base offense level).

Finally, we cannot say that the Guidelines fully accounted for the degree of harm caused in light of G.M.'s age when it set the base offense level for § 2A3.1, such that a subsequent enhancement for age would constitute double counting. According to the commentary to § 2A.3.1, "[t]he base offense level represents sexual abuse as set forth in 18 U.S.C. § 2242." U.S.S.G. § 2A3.1 cmt. background. Section 2242 prohibits sexual abuse of a victim otherwise incapable

of understanding or declining the defendant's actions. This guideline does not provide for an additional enhancement based on a victim's incapacitation. By expressly defining the scope of the conduct accounted for in the base offense level, the Guidelines are clear that the base offense level does not expressly account for age while it does account for a victim's incapacitation.

This court has applied similar logic concerning the use of conduct to apply an enhancement which encompasses an element of the offense of conviction, concluding that "[t]he bar on double counting comes into play only if the offense itself *necessarily* includes the same conduct as the enhancement." *United States v. Senn*, 129 F.3d 886, 897 (7th Cir. 1997) (emphasis in original); *United States v. Ford*, 21 F.3d 759,765 (7th Cir. 1994) ("[T]he base offense level prescribed by the guidelines for a particular crime presumably reflects, or 'includes,' those characteristics considered by Congress to inhere in the crime at issue.") (quoting *United States v. Butt*, 955 F.2d 77, 89 (1st Cir. 1992)). *Accord United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993) ("[T]he use of a single aspect of conduct both to determine the applicable offense guideline and to increase the base offense level mandated thereby will constitute impermissible double counting only where, absent such conduct, it is impossible to come within that guideline."). For example, in *United States v. Wimberly*, 60 F.3d 281, 288 (7th Cir. 1995), we held that a defendant convicted of the criminal sexual assault of an individual under the age of 12, pursuant to 18 U.S.C. § 2241(c), was not subject to double counting when the district court also enhanced his offense level four points based on the victim's age, pursuant to § 2A3.1(b)(2)(A). We reasoned that because the § 2A3.1(b) enhancements apply to convictions under *both* § 2241 and § 2242—and, significantly, a violation of § 2242 does not require the victim to be under the age of 12—these enhancements "account for more

egregious conduct" and thus were drafted "as punishment mechanisms distinct from the underlying offense." *Id. Accord United States v. Balfany*, 965 F.2d 575, 584 (8th Cir. 1992) (rejecting parallel argument reasoning that "[t]he Sentencing Commission obviously intended that the age of the victim and other elements of aggravated sexual assault be addressed through enhancements of the base offense level"); *United States v. Ransom*, 942 F.2d 775, 778-79 (10th Cir. 1991) (same).[8] For these reasons, Beith's sentence could

---

[8] Though not addressing the precise question presented by Beith, in *United States v. Sorensen*, 58 F.3d 1154, 1160-61 (7th Cir. 1995), this court found no double counting when the district court applied the aggravated assault offense guideline, § 2A2.2, based on the "involvement" of a dangerous weapon in the commission of a crime, and then subsequently enhanced the defendant's sentence, pursuant to § 2A2.2(b)(2)(B), based on the "use" of the dangerous weapon in the commission of the crime. We also rejected the defendant's second double counting argument concerning the use of the victim's status as a federal officer. We found that different conduct supported the application of the offense guideline (*i.e.*, the victim's status as a federal officer) and the enhancement (*i.e.*, the fact that the defendant's actions were motivated by the victim's status). *Id. Accord United States v. Johnstone*, 107 F.3d 200, 212 (3d Cir. 1997); *Valdez-Torres*, 108 F.3d at 389; *Reese*, 2 F.3d at 896; *United States v. Williams*, 954 F.2d 204, 207 (4th Cir. 1992). *But see United States v. Farrow*, 198 F.3d 179, 195 (6th Cir. 1999) *and United States v. Hudson*, 972 F.2d 504, 506-07 (2d Cir. 1992) (finding double counting when a defendant is sentenced under the aggravated assault guideline based on the "involvement" of a weapon that is not inherently dangerous and is also subsequently enhanced based on the "use" of that weapon because there is no real distinction between "involvement" and "use" of weapons which are inherently non-dangerous, such as chairs or automobiles, as it is their use that makes them dangerous). The government cites *Sorensen* for the proposition that the Guidelines invite certain types of double counting; however, in *Sorensen* we rejected the

(continued...)

properly be enhanced four points based on G.M.'s age.

## C. Vulnerable Victim Enhancement Was Not Appropriate

Beith next challenges the district court's decision to enhance his sentence two points pursuant to § 3A1.1(b)(1) based on the district court's conclusion that G.M. was "particularly susceptible to criminal conduct." The district court based its decision upon the following findings:

> The victim had previously disclosed to Defendant allegations of misconduct directed to her by her father. Defendant's Exhibit D at Pages 13 and 14. . . . *[W]hether the underlying conducts actually occurred remains unknown*, it is undisputed that the victim *claimed* that she had been subject to misconduct. The victim was upset by her family problems and even cursed her father in the Defendant's videotapes of the victim. See Government's Exhibits 9 and 14. The defendant did not discourage the victim's behavior when she was repeatedly cursing her father. The defendant knew this and stepped up his conduct with the victim after learning these facts. When Defendant was confronted by Ms. Waddell about the amount of time the [victim] was missing, he explained that he was counseling her regarding family problems. Defendant's Exhibit D at 16.

---

[8] (...continued)
defendant's double counting arguments because we found that the conduct which supported the application of the offense guideline and the subsequent enhancement was in fact distinct. Here, where it is only the victim's age which supports both application of the offense guideline and a subsequent enhancement under that new guideline, *Sorensen* is instructive but not conclusive.

Sent. Tr. II at 83-84 (emphasis added). Assuming that the facts upon which the enhancement was based were properly found, *see United States v. Booker*, 125 S. Ct. 738 (2005), the district court's determination that the victim was "unusually vulnerable" is reviewed here for clear error, *see United States v. Parolin*, 239 F.3d 922, 926 (7th Cir. 2001).

Section 3A1.1(b)(1) provides that a defendant's base offense level should be increased two points "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." The purpose of this enhancement is to punish a defendant for taking advantage of victims who are less able or likely to protect themselves from criminal conduct. *United States v. Grimes*, 173 F.3d 634, 637 (7th Cir. 1999); *United States v. Lallemand*, 989 F.2d 936, 939 (7th Cir. 1993). A victim may be vulnerable due to "age, physical or mental condition," or may be "otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 app. note 2. This enhancement is inapplicable "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline. For example, if the offense guideline provides an enhancement for the age of the victim, this subsection would not be applied unless the victim was unusually vulnerable for reasons unrelated to age." *Id.* While it is no longer necessary to prove that the defendant targeted the victim based on his or her vulnerability, the government still has the burden of proving the particular characteristic of the victim which makes him or her vulnerable. *United States v. Paneras*, 222 F.3d 406, 413 (7th Cir. 2000).

As Beith's sentence had already been enhanced based on G.M.'s age, the district court properly segregated that factor from its discussion concerning vulnerability. However, the court failed to make any findings concerning whether G.M. was in fact molested by her father. During the first sentencing hearing the defendant stipulated that he was "made aware of *allegations* regarding prior molestation." Sent. Tr.

I at 5 (emphasis added). The defendant, however, maintains that G.M. recanted, while the government argues that she sustained her accusation. Victims of molestation and sexual assault certainly qualify as vulnerable victims, *see United States v. Snyder*, 189 F.3d 640, 649 (7th Cir. 1999) (victim had a history of molestation); *United States v. Newman*, 965 F.2d 206, 211 (7th Cir. 1992) (20-year-old victim was raped at 15); *United States v. White*, 979 F.2d 539, 544 (7th Cir. 1992) (victim lived in group home and had a history of sexual abuse), as do those found to have mental or severe emotional problems, *see, e.g.*, *United States v. Romero*, 189 F.3d 576, 590 (7th Cir. 1999) (victim was an adopted child under the treatment of a psychiatrist for Attention Deficit Disorder and had a history of emotional problems). However, the district court did not find that G.M. was in fact a victim of molestation or that she had severe emotional problems. The court seems to imply that a child who alleges molestation, whether verified or not, is vulnerable. We cannot agree. Given the fact that G.M.'s age had already been the subject of an enhancement, her allegations of molestation standing alone are insufficient to establish vulnerability.[9]

---

[9] Though the district court adopted the findings in the PSR, the PSR states only that:

> [S]ometime in late February, early March, G.M. confided to the defendant that her father had inappropriately touched her breast and her bottom when he was drunk. Initially, Mr. Beith directed G.M. to tell her mother. In reality, G.M. did not inform her mother. Approximately a month later, in a meeting with G.M.'s mother regarding tutoring, Beith brought up the topic of G.M.'s father touching her. At that time, she was shocked to learn of the allegation and she immediately confronted her husband. G.M.'s mother indicates that she believes her daughter's
>                                                      (continued...)

Without a finding from the lower court that sufficient evidence exists to substantiate the allegations of molestation, or that G.M. was suffering from severe emotional problems, we are left with findings that G.M. was having family problems and was seen cursing her father. Unfortunately, family discord is common among victims such as G.M. *See United States v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002) (upholding application of enhancement where district court found that victim had a mental condition and was previously raped but reversing application of enhancement based on victim's unstable personal life and a chemical dependency as the latter victim's characteristics were typical of Mann Act (18 U.S.C. § 2423) victims); *see also United States v. Evans*, 285 F.3d 664, 672 (8th Cir. 2002) (reasoning that a finding of vulnerability should be based on a factor/characteristic which is unusual to victims of the underlying offense); *United States v. Footman*, 66 F. Supp. 2d 83, 96 (D. Mass. 1999) (same) (citing *United States v. Sabatino*, 943 F.2d 94, 103 (1st Cir. 1991)). A finding of family problems, therefore, is not sufficient to support this enhancement. And this is to say nothing of the impropriety of increasing Beith's sentence based on facts neither jury proven nor defendant admitted under the mandatory scheme that once was the Guidelines. *See Booker*, 125 S. Ct. at 756. Accordingly, and notwithstanding our distaste for the particular heinousness of his crime, we must vacate Beith's sentence and remand this case for a determination of whether the record supports a finding that G.M. was in fact vulnerable.

Having decided to vacate and remand Beith's sentence, we note that when the district court imposes its new sen-

---

[9]   (...continued)
       accusation but thinks her husband's conduct was a result
       of his drinking problem, and not that he touched her for
       his own gratification.

PSR at ¶ 14. However, it is clear from the court's findings that it did not find that the molestation actually occurred.

tence upon remand, it must do so in accord with *Booker*, as *Booker* decidedly governs all sentences imposed after its date of decision. So if the district court again contemplates exercising its discretion to increase Beith's sentence, it must first concentrate its attention on the universe of sentencing factors and policy concerns memorialized by Justice Breyer's remedial opinion (*Booker*, 125 S. Ct. at 764-66) and 18 U.S.C. § 3553(a).


## D.  Abduction Enhancement Was Not Appropriate

Beith also challenges the district court's application of an abduction enhancement pursuant to U.S.S.G. § 2A3.1(b)(5) (providing for a 4-level increase where the victim was abducted). The Guidelines define abduction as "forcing" a victim to accompany an offender to a different location. U.S.S.G. § 1B1.1 app. note 1(a). This court equates abduction to kidnaping, reasoning that physical force is not necessary to kidnap or abduct. *Romero*, 189 F.3d at 590. "Inveigling," or imposing one's will through "trickery" or "gentle urging" or flattery, is a proper basis for applying the enhancement. *Id.* (adopting reasoning of *United States v. Saknikent*, 30 F.3d 1012, 1014 (8th Cir. 1994)); *see also United States v. Hefferon*, 314 F.3d 211, 226-27 (5th Cir. 2002) (finding abduction where the defendant appealed to a seven year old's obedience to adults to lure her to a secluded place to force her to perform oral sex). Here, the district court found that Beith abducted G.M. through the process of inveigling. To support its finding of inveigling, the district court found that Beith: (1) spent a "considerable amount of time with [G.M.]"; (2) gave her special privileges in school by allowing her to spend time in his office and giving her passes when she was late to class; (3) took G.M. to his home on several occasions; (4) videotaped her; (5) had inappropriate conversations with her about him no longer being a virgin; (6) gave her a pendant and his watch; and,

(7) told the victim he would commit suicide if she left him. Again, assuming all penultimate facts were properly found, *see United States v. Booker*, 125 S. Ct. 738 (2005), we review the district court's ultimate finding that Beith abducted G.M. for clear error. *United States v. Vang*, 128 F.3d 1065, 1073 (7th Cir. 1997) (reviewing factual finding for clear error).

Beith argues that his actions do not rise to the level of "inveigling" because he did not "deceive" or "trick" G.M. into leaving with him. He relies on *Romero*, in which this court found abduction by inveigling where the defendant lied to the victim about his identity over the Internet to gain the child's confidences and convince him to flee with the defendant. While he argues that all the "abduction by inveigling" cases thus far have involved in some form a deception, it does not necessarily follow that "inveigling" under the Guidelines requires deceit or trickery.

Nonetheless, we find that the evidence could not support a finding of "abduction by inveigling." Recall that it was G.M. who called to warn Beith of the police's intent to interview and possibly arrest him. The factual findings suggest that Beith's reprehensible actions were not so much concentrated toward imposing his will over G.M. in absconding to Las Vegas as they were motivated toward cultivating a sincere—albeit perverse and illegal—relationship. Indeed, he made no false promises to her, and his overtures, while undeniably vile, were cloaked in neither deceit nor trickery. At most, the findings upon which the district court based the abduction enhancement suggest that Beith endeavored to develop G.M.'s trust—a trust that he would ultimately abuse. This behavior also merits punishment, and for it the district court has already obliged by enhancing his sentence pursuant to U.S.S.G. § 2A3.1(b)(3) (the enhancement based on his custody and supervisory control over G.M. as her

principal).[10] But we find no tenable connection between the manner in which Beith pursued G.M. in molesting her and his ultimate act of driving her to Nevada that could justify a finding of abduction. Accordingly, additional enhancement under the rubric of "abduction by inveigling" is inappropriate here, and thus provides another ground for vacating sentence and remand.

Furthermore, with the Supreme Court's recent pronouncement in *United States v. Booker*, 125 S. Ct. 738 (2005), the district court's basis for imposing the abduction enhancement has been compromised. Here, the district court erred both by increasing Beith's sentence—via the obstruction of justice enhancement—based on facts neither admitted by himself nor proven to a jury beyond a reasonable doubt, *id.* at 756 (holding that under the formerly mandatory Guidelines regime, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"), and through its mandatory application of the Guidelines in imposing his sentence, *see id.* at 757, 769 (remedying the Guidelines by rendering them "effectively advisory," and allowing for resentencing notwithstanding the absence of a Sixth Amendment violation in a case where Guidelines mandatorily imposed); *United States v. White*, No. 03-2875, 2005 WL 1023032, at *7 (7th Cir. May 3, 2005); *United States v. Castillo*, Nos. 02-3584, *et al.*, 2005 WL 1023029, at *15 (7th Cir. May 3, 2005); *United States v. Schlifer*, No. 04-3398, 2005 WL 774914 (7th Cir. Apr. 7, 2005). However, Beith did not raise a *Booker* issue (nor any related Sixth Amendment challenge, *see*, *e.g.*, *Blakely v. Washington*, 124 S. Ct. 2531

---

[10] U.S.S.G. 2A3.1(b)(3) provides: "If the victim was (A) in the custody, care, or supervisory control of the defendant . . . increase by 2 levels."

(2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000)) before the district court. Therefore, our review would be for "plain error" only. *See United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005); *see also United States v. Olano*, 507 U.S. 725, 731 (1993); *Booker*, 125 S. Ct. at 769 (directing reviewing courts presented with Sixth Amendment objections based on *Booker* and the line of cases from which it was derived "to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test"); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

Because we find grounds to remand this case for resentencing independent of his *Booker* challenge (namely, evidence insufficient to support imposition of the vulnerable victim and abduction enhancements), we need not delve into a detailed plain error analysis or the particular merits of Beith's *Booker* claim. By remanding Beith's case for resentencing, we send it out into a sentencing world now governed by *Booker*—a world in which sentencing judge and resentencing judge alike cannot escape the binding prescriptions of the Court's recent pronouncement.

## III.  CONCLUSION

For the reasons stated above, we VACATE Beith's sentence and REMAND his case for resentencing consistent with this opinion and the Supreme Court's recent decision in *United States v. Booker*, 125 S. Ct. 738 (2005).

A true Copy:

    Teste:


                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*